**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUN 1 5 2016

**MATTHEW J. DYKMAN**
CLERK

UNITED STATES OF AMERICA,

        Plaintiff,

v.

KEVIN FOLSE,

        Defendant.

No. 16 CV 586 JH/CG

## MOTION TO ADDRESS CONDITIONS OF CONFINEMENT

Ryan J. Villa, court-appointed counsel for Defendant Kevin Folse, respectfully moves this Court, pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution to address Mr. Folse's unconstitutional conditions of confinement.

### INTRODUCTION

The United States Marshals Service (USMS) is responsible for the "safe, humane care and custody" of those placed in its care. U.S. Marshals Fact Sheet, Prisoner Operations, 2015. In derogation of that important duty, USMS has, without apparent basis, placed Mr. Folse in conditions of confinement that interfere with Mr. Folse's constitutional right to assistance of counsel, due process and a fair trial. Because his conditions of confinement violate the United States Constitution and jeopardize Mr. Folse's right to effective of counsel, Mr. Folse requests the Court address Mr. Folse's conditions of confinement.

### BACKGROUND

Mr. Folse is detained at the Penitentiary of New Mexico (PNM) outside of Santa Fe pending sentencing in cause no. 1:15-cr-02485-JB and pending trial in the above-entitled cause. PNM is a facility housing individuals who have been convicted of offenses and sentenced to prison

terms in the state courts of New Mexico. The Department of Corrections website describes the

facility as follows:

> "PNM is the Department's only super-max facility, housing the highest security
> classification of offenders in the state of New Mexico. The Penitentiary of New
> Mexico Complex is comprised of three facilities: Level-II a minimum-restrict unit,
> Level-IV/V and Level-VI housing the highest security classification of offenders. .
> . . The "level system" within the New Mexico Corrections Department requires that
> an inmate or inmates who cannot be managed in general population, and/or cannot
> function in general population due to criteria established policy will be separated
> from the general population. Management of such inmates will be based upon
> behaviorally based step programs, in which increased privileges are granted for
> inmates who demonstrate appropriate behavior for a specified period of time.[1]

Inmates (not detainees) in Level 6 at the PNM North facility are held in solitary

confinement conditions. The circumstances that justify this most draconian of housing of convicted

inmates are described thus: "[I]nstitutional behavior threatens the security of the institution,

requiring separation from the general population. This behavior includes, but is not limited to,

assault, escape, inciting riots and planning or participating in security threat group activities.

Inmates are housed in single occupancy cells for 23 hours per day and are not allowed to

congregate with other inmates. They receive one (1) hour per day for recreation."[2] Nothing that

Mr. Folse has done while in USMS custody meets the DOC criteria for incarceration under Level

6 conditions.

Mr. Folse's access to a telephone is severely restricted. He is limited to a few calls a month

to family. He cannot call his lawyer without going through a laborious process that can take weeks

to complete - that means weeks between the request and the phone call. When counsel attempts to

set up phone calls by contacting PNM, it can take days or weeks to get a call back.  This limitation

---

[1] cd.nm.gov/apd/pnm.html

[2] http://corrections.state.nm.us/family/FAQ.html

violates Mr. Folse's constitutional right to assistance of counsel and due process.

Visitation with Mr. Folse is similarly severely restricted. Attorney visitation is available on three days during the week, and at limited times during those days. For instance, all visitation must be completed by 3:00 p.m. Visitation is through a clear barrier; actual contact visits, which are routine at the pretrial detention facilities used by the USMS, are not permitted. Level 6 conditions of incarceration limit the ability of counsel and Mr. Folse to possess and review discovery, particularly the anticipated electronic portions of the discovery, further impinging on Mr. Folse's constitutional right to effective assistance of counsel. For instance, counsel cannot bring his laptop to the visit and many things that need to be reviewed with Mr. Folse require a laptop.

Mr. Folse, like the other men housed in Level 6 at PNM North, is denied access to "commissary," which comprises basic necessities that detainees/inmates can purchase. Commissary includes personal hygiene items. Upon information and belief, the federal pretrial detainees may now be receiving a limited form of commissary. Unlike the other men housed in Level 6, Mr. Folse has not been sentenced for an offense; he is theoretically in pretrial detention. Most of the others incarcerated at PNM North, and those held under Level 6 conditions, have already been convicted of serious felony offenses, and have demonstrated an inability to follow the rules in other, less draconian prison facilities. Mr. Folse is presumed innocent of the instant charges and is awaiting sentencing on the other case. Mr. Folse, while accused of assault on a corrections officer, has done nothing in custody to justify Level 6 conditions of incarceration. The assault in this case involves pulling away from a corrections officer. Mr. Folse does not pose a risk of harm to anyone in an institutional setting, and there is no credible evidence to justify his current conditions of confinement.

Mr. Folse is only permitted three showers a week.  Because he hardly ever leaves his tiny cell, one of the only things he can do to occupy his time is exercise.  This causes him to perspire and he is forced to give himself a "birdbath" using the tiny sink in his cell.

Mr. Folse reports that he has been subjected to abuse while at PNM North, Level 6. He reports having been harassed about the offense for which he is charged. He reports that he has been physically abused by the corrections officers.  They have given him less food than he is entitled to by removing some of the food from his tray.  Without commissary to supplement these meals, he goes to sleep at night starving.  He cannot stay asleep due to the stomach pains from hunger. He reports that he has been subjected to conduct that can only be characterized as torture.

## ARGUMENT

The citizens of this country who are held in confinement as pre-trial detainees have a basic, constitutional right to liberty which protects them from being subjected to any severe restrictions that "amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Any other rule would abrogate the fast eroding proposition that a person is innocent until proven guilty. *Ibid*.

Mr. Folse is being held in unconstitutionally abusive and punitive conditions, in violation of the Fifth and Eighth Amendments to the United States Constitution. He is being held in conditions that substantially impair his access to counsel, implicating his constitutional right to counsel. Detention officials are aware that prolonged isolation in segregated housing units poses a known risk of harm to the mental and physical health of pretrial detainees, yet these officials are deliberately indifferent to that risk.  Indeed, just two days ago, President Obama questioned the wisdom and effectiveness of the use of solitary confinement.[3]

---

[3] Barack Obama: Why we must rethink solitary confinement.  The Washington Post (January 25, 2016), available at: https://www.washingtonpost.com/opinions/barack-obama-why-we-must-rethink-solitary-confinement/2016/01/25/29a361f2-c384-11e5-8965-0607e0e265ce_story.html.

The conditions affecting Mr. Folse's attorney-client communication significantly impair his ability to communicate with his counsel and assist in his defense, in violation of the Sixth Amendment of the United States Constitution.  Mr. Folse is denied the same privileges as other, similarly situated pretrial detainees, in violation of the Fifth Amendment to the United States Constitution.   The cumulative effect of these multiple, restrictive and punitive conditions of pretrial confinement will deprive Mr. Folse of his constitutional right to a fair trial and expose him to unnecessarily punitive conditions which are not justified by a legitimate need.  Mr. Folse has attempted to resolve these matters without the need for motions practice and without the Court's involvement. Counsel has requested of USMS that Mr. Folse not be held in what are essentially super-max prison conditions. The request has been denied.  Because Mr. Folse is being held in conditions that violate various important constitutional rights and jeopardize the fairness and reliability of proceedings in this case, counsel respectfully asks that the Court reconsider its order detaining Mr. Folse, and fashion conditions of release which will address the Court's concerns regarding potential risk of flight or danger to the community. In the alternative, counsel asks that the Court order that Mr. Folse be returned to appropriate pretrial detention, under appropriate conditions; that he be provided with proper medical care; and that he be afforded access to effective assistance of appointed counsel.

Title 18 U.S.C. § 3142(i)(2) provides that a detention order should direct that the defendant should be held in the custody of the Attorney General " separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal". The detention order in this case so provides. Mr. Folse is being held in a state penitentiary, a facility which houses state offenders who have been convicted and serving sentences. Mr. Folse's incarceration at PNM violates the statute and the Court's order.

By caging Mr. Folse in his cell for twenty three hours a day, denying him basic necessities like a daily shower, and then shackling his hands and feet for all movement within the state prison, the government has begun to exact a unjustifiable punishment from this individual long before he has even been convicted of or sentenced for his crime. Mr. Folse has been limited in his access to the courts; he faces a gauntlet of unwarranted challenges just to consult with his attorney; and he is being subjected to a slow form of psychological punishment which will have a deleterious effect on his mental and physical health. All of these twenty-first century security measures have been implemented without any showing of good cause or any rational basis for this disparate treatment.

Mr. Folse submits that his present conditions of pre-trial confinement violate the Fifth, Sixth, Eighth and Fourteenth Amendment of the United States Constitution, and he looks to this Court to redress these violations by fashioning appropriate conditions of release.

## I.  Mr. Folse's current conditons of confinement are punitive and retributive, in violation of the Eighth and Fifth Amendments to the U.S. Constitution.

Pre-trial detainees have a liberty interest firmly grounded in federal constitutional law. *Fuentes v. Wagner*, 206 F.3d 335, 341 (3rd Cir. 2000). The Due Process Clause of the United States Constitution prohibits the Government from punishing a pre-trial detainee in any way unless he is lawfully convicted of a crime. *Bell v. Wolfish, supra,* 441 U.S. at 535.

A person who is lawfully detained may only be subjected to those restrictions of liberty which are *reasonably* calculated to effectuate the purposes of the pre-trial detention. *Bell v. Wolfish, supra,* 441 U.S. at 540. Although the effective management of a detention facility may justify the imposition of certain conditions and restrictions, if a detainee presents substantial evidence to show that prison officials have exaggerated their response to a perceived threat or that such a threat does not exist, a court may enter an order to correct the unconstitutionally punitive conditions. *Id.*

The conditions and restrictions imposed by Mr. Folse's pre-trial confinement are punitive, irrational and have been imposed without little evidence to support the measures. These restrictions are not reasonably related to the non-punitive objectives of ensuring the Mr. Folse's presence at court or to ensuring the safety and security of the institutions. Instead, Mr. Folse has been subjected to the most extreme conditions of pre-trial confinement based on no apparent basis.

The due process standard for determining whether certain pre-trial restrictions are punitive is most clearly set out in *Bell*. Pre-trial conditions are punitive when there is a showing of an express intent to punish pre-trial detainees, when the conditions are unnecessarily excessive in light of a legitimate non-punitive purpose, or when jail officials are deliberately indifferent to a substantial risk of harm. *See Bell v. Wolfish, supra,* 441 U.S. at 561; *see also Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

A showing of an intent to punish suffices to show unconstitutional pre-trial punishment. *Bell v. Wolfish, supra,* 441 U.S. at 538-39 n. 20. In addition, even in the absence of an express intent to punish, a court may nonetheless infer an intent to punish when a condition of pre-trial detention "is not reasonably related to a legitimate goal–if it is arbitrary or purposeless." *Id.* at 539. For example, an intent to punish may be inferred when the condition is excessive in relation to the legitimate purpose assigned to it. *Id.* at 538.

"Retribution and deterrence are not legitimate non-punitive governmental objectives." *Bell v. Wolfish, supra*, 441 U.S. at 539, n. 20; *see also McMillian v. Johnson*, 88 F.3d 1554, 1565 (11th Cir. 1996) (clearly established law prohibited placing a pre-trial detainee on death row for purposes of punishment). Jail officials also cannot legitimize excessive measures by merely asserting a nonpunitive purpose. *See Bell v. Wolfish, supra,* 441 U.S. at 539, n. 20j (stating that loading a detainee with chains and shackles may ensure presence at trial and preserve security but is

nonetheless unconstitutional).

Many courts have concluded that extreme deprivations and repressive conditions of confinement like those experienced by Mr. Folse housed in the most draconian administrative segregation in a post-conviction penal institution can amount to a form of cruel and unusual punishment for sentenced prisoners. *Ruiz v. Johnson*, 37 F. Supp. 2d 855, 907-11 (S.D. Tex. 1999), *rev'd on other grounds*, 243 F.3d 941 (5th Cir. 2001), *adhered to on remand*, 154 F. Supp. 2d 975 (S.D. Tex. 2001). "More than mere deprivation," the inmates in such units "suffer actual psychological harm from the almost total deprivation of human contact, mental [stimulation], personal property and human dignity." *Id.* at 913. At its worst, solitary, restrictive administrative segregation "are virtual incubators of psychoses–seeding illness in otherwise healthy inmates and exacerbating illness in those already suffering from mental infirmities." *Id.* at 907.

The cruel and unusual conditions of extreme isolation are clearly punitive when applied to Mr. Folse. During his time in Level 6 segregation, Mr. Folse has remained isolated in his small cell for twenty-three hours a day. He gets only a few phone calls a month. He does not have access to commissary products. He diet is insufficient, as he is routinely denied a full meal and cannot get food products from commissary, denying him proper nutrition. His access to his counsel is severely restricted to the point of violating his constitutional right to effective assistance of counsel. He has been physically abused. The corrections officers, people who are ostensibly responsible for Mr. Folse's care, have made it clear that his treatment is due to the nature of the offense which has been widely publicized. The vindictiveness aspect of his present circumstances are patent.

## II.     Mr. Folse's placement in solitary confinement violates the U.S. Constitution.

Mr. Folse's current confinement mirrors the conditions imposed on inmates confined in

"super-maximum" prisons. Like the administrative segregation units in the Detention Centers, "supermax prisons house prisoners in virtual isolation and subject them to almost complete idleness for extremely long periods of time." Dr. Craig Haney, "Mental Health Issues in Long-Term Solitary and 'Supermax' Confinement," 49 CRIME & DELINQUENCY 124, 126 (2003). In most solitary units, including the Defendant's unit, an hour out of the cell a day is the norm, there is virtually no group or social activity of any kind, there are severe restrictions on the amounts of personal property the Defendants may possess, their access to prison commissary items is limited, and their brief periods of outdoor exercise take place in caged areas called "dog runs." *Id.*

The greatest danger posed by isolating an individual in such prolonged solitary confinement and sensory deprivation is the risk that the person will suffer from an accumulation of abnormalities which most people have termed "SHU Syndrome." *See, e.g., Jones "El v. Bergen*, 164 F. Supp. 2d 1096, 1101-02 (W.D. Wis. 2001).[4] "Social science and clinical literature have consistently reported that when human beings are subjected to social isolation and reduced environmental stimulation, they may deteriorate mentally and in some cases develop psychiatric disturbances." *Madrid v. Gomez*, 889 F. Supp. 1146, 1230 (N.D. Cal. 1995).

There is overwhelming evidence that a range of adverse symptoms have been observed to occur in individuals housed in super-maximum conditions, including "appetite and sleep disturbances, anxiety, panic, rage, loss of control, paranoia [and] hallucinations." Haney, *supra*, 49 CRIME & DELINQUENCY at 130. "There is not a single published study of solitary or supermax-like confinement in which nonvoluntary confinement lasting for longer than ten days where participants were unable to terminate their isolation at will that failed to result in negative psychological effects." *Id.* at 132.

---

[4] "SHU" is the acronym for Security Housing Unit, the common name for super-maximum isolation units.

Any prison official, aware of the standard sixty-day limit most inmates face in solitary confinement as a sanction for institutional misconduct, must know that prolonged isolation adversely affects an individual and subjects him or her to harm. Nevertheless, Mr. Folse has been subjected to precisely such debilitating conditions– he has been locked in a concrete box, and released only to a cage or a cherished shower. These conditions are patently punitive and psychologically dangerous in violation of the Fifth Amendment of the United States Constitution, and they have been imposed without good cause.

Unlike a convicted prisoner, a pre-trial detainee has a liberty interest in not being placed in disciplinary segregation. *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000). "[A] pretrial detainee can only be punished for misconduct that occurs while he is awaiting trial in pretrial confinement status." *Rapier v. Harris*, 172 F.3d 999, 1003 (7th Cir. 1999). However, while jail officials can punish a pre-trial detainee for institutional misconduct, a pre-trial detainee may only be subjected to disciplinary segregation after a fair hearing to determine whether in fact s/he has violated any rules of the institution. *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996), *Collazo-Leon v. United States Bureau of Prisons*, 51 F.3d 315 (1st Cir. 1995). While Mr. Folse may have been accused of violating rules at the TCDF, and is accused, but presumed innocent of the assault (pulling away from a corrections officer), none of this conduct justifies his present draconian circumstances. Indeed, during the time that Mr. Folse spent in penal custody in the State of New Mexico following his conviction for a state offense years ago, he was never sent to another facility, let alone Level 6 at PNM North, for misconduct. That most extreme of punishments has apparently been reserved for a time at which is stands accused, not convicted or sentenced, of offenses.

Mr. Folse has not been provided with information explaining this transfer and this treatment. He is not aware of any evidence which justifies this excessive isolation and the severe

restriction on his jail privileges. No jail official has provided Mr. Folse with a written explanation regarding his segregation status. He has never been given an opportunity to explain why he does not present any danger to the safety or security of the institution.

Mr. Folse has been deprived of his right to procedural due process prior to their arbitrary placement in segregation without any procedural protections. *See, e.g., Love v. Sheahan*, 156 F.Supp.2d 749 (N.D. Ill. 2001) (detainee held in segregation for over two and a half years stated a valid claim that his procedural due process rights were violated by the punishment). The absence of any evidence to support the segregation and shackling does further violence to Mr. Folse's constitutional rights.

### III.    Mr. Folse's right to counsel is violated by the present conditions of confinement.

The right of the accused "in all criminal prosecutions ... to have the assistance of counsel for his defense" is a direct right, grounded squarely in the text of the Constitution. U.S. Const., Amend. VI. Unreasonable interference with the accused's ability to consult with counsel or present a defense impermissibly impairs the accused's Sixth Amendment rights and may be corrected by the District Court. *Benjamin v. Fraser*, 264 F.3d 175, 185 (2nd Cir. 2001). Denial of the detainee's right to consult with counsel, and counsel's professional assistants, "is not subject to prejudice analysis." *Perry v. Leeke*, 488 U.S. 272, 278-280 (1989); *see also Smith v. Coughlin*, 748 F.2d 783, 789 (2nd Cir. 1984) (ban on visits by paralegal personnel violated the Sixth Amendment). Mr. Folse has been exposed to unnecessarily harsh conditions of pre-trial confinement which violate the Sixth Amendment. The conditions have limited Mr. Folse's right to meaningfully consult with his attorney and his access to this Court. Most troubling, if the extreme conditions of isolation continue, Mr. Folse may likely be denied the opportunity to assist his counsel in preparations for trial, implicating his rights to due process and effective assistance of counsel.

Those seeking to vindicate their rights have a constitutional right of access to the courts which prohibits state actors from impeding efforts to pursue legitimate claims and defenses. *Lewis v. Casey*, 518 U.S. 343, 350-54 (1996); *Bounds v. Smith*, 430 U.S. 817, 821- 23 (1977). The accused demonstrates a violation of this right by showing that state actors hindered his or her efforts to pursue a non-frivolous legal claim and that the defendant suffered actual harm. *Lewis*, 518 U.S. at 350-54. "A policy both preventing detainees from going to court and limiting drastically their access to attorneys have obvious problems under these precedents." *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000); *see also Benjamin v. Fraser*, *supra*, 264 F.3d at 185-187.

It is extremely difficult for either Mr. Folse or his counsel to set up a legal phone call. Often taking weeks to schedule.  Visitations are also severely limited both in time and nature, due to the limited availability of visitations and the lack of contact visits or use of computers.  It is not apparent who has authorized these extra precautions, why such restrictions are necessary, or what additional security measures will be added. What is certain is that these very obvious, public security measures create a false impression that Mr. Folse is dangerous, even in an institutional setting. Even more egregious, these restrictions are absolutely unnecessary. He has appeared in federal court on these charges without incident.  The allegations of misconduct levied while he was incarcerated at the TCDF are minor at best. These extreme measures severely limit Mr. Folse's access to the Court and compromise his ability to assist in his own defense without any rational basis.

## IV.     Unwarranted shackling violates the U.S. Constitution.

"[L]iberty from bodily restraint has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary government action." *Youngberg v. Romero*, 457 U.S. 307,

316 (1982). The Due Process Clause prohibits the use of bodily restraints in a manner that serves to punish a pre-trial detainee. *Id.* at 319-20. Consequently, a pre-trial detainee may not be subjected to excessive restraints–including leg shackling, handcuffing, or a combination of restraints with the use of a "black box"– without some showing that these painful, onerous conditions are necessary to preserve the safety of the institution or the security of the Court. *Benjamin v. Fraser*, 264 F.3d 175, 182 (2nd Cir. 2001).

The use of bodily restraints becomes punishment when their use is not rationally related to a legitimate, non-punitive government purpose, or the restraints are excessive in light of the purpose they allegedly serve. *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000). For example, the Seventh Circuit affirmed the determination that shackling a hospital detainee to his bed, despite the continuous presence of a guard, is plainly excessive in the absence of any indication that the detainee poses some security risk. *Id.* As the Supreme Court explained in *Bell v. Wolfish:*

> "Loading a detainee with chains and shackles and throwing him in the dungeon may ensure his presence at trial and preserve the security of the institution. But it would be difficult to conceive of a situation where conditions so harsh, employed to achieve objectives that could be accomplished in some alternative and less harsh methods, could not support a conclusion that the purpose for which they were imposed were punishment." *Bell v. Wolfish, supra,* 441 U.S. at 539, n. 20.

Mr. Folse is shackled for attorney-client visits, turning consultation with counsel into a painful and brutal experience. Like the Defendants in *May*, the shackling is irrational because Mr. Folse is locked in an attorney-client visiting room and cannot be released without the consent of correctional officers. There is no way Mr. Folse can communicate freely and meaningfully with his attorneys while he is chained in this matter.

Mr. Folse is also shackled for all movement outside of his segregation unit. This painful, onerous treatment is punitive and is not necessary to preserve the safety of the institution or the

Court. Most outrageous, these conditions persist without any showing of good cause for the infringement of Mr. Folse's basic right to be free from bodily restraint.

The basic concept underlying the Eighth Amendment is nothing less than human dignity. The Eighth Amendment of the United States Constitution embodies "evolving standards of decency which mark the progress of a civil society." *Trop v. Dulles*, 356 U.S. 86, 100-101 (1958). Pre-trial detainees are entitled to at least as much protection as convicted prisoners and the protections of the Eighth Amendment establishes the minimum level of constitutionally adequate pre-trial conditions. *Fuentes v. Wagner, supra,* 206 F.3d at 344, *see also, Bell v. Wolfish*, 441 U.S. at 535.

When a Fifth Amendment challenge arises in the context of pre-trial conditions of confinement, a court may apply an Eighth Amendment analysis and determine whether jail officials are acting with deliberate indifference to a detainee's health or welfare, or if the detainee was "denied the minimal civilized measure of life's necessities." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992), *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To demonstrate deliberate indifference, a detainee must show that jail officials know of and disregard an excessive risk of harm to a detainee's health or safety: "the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and [s/he] must also draw the inference." *Farmer v. Brennan, supra,* 511 U.S. at 837.

Conditions that cannot meet the Eighth Amendment standard will necessarily violate the due process clause of the Fifth Amendment as well. In *Clemmons v. Bohannon*, 956 F2d 1523, 1527 (10th Cir. 1992), the Tenth Circuit Court of Appeals reaffirmed "that the 'core areas' of any Eighth Amendment claim are shelter, sanitation, food, personal safety, medical care and adequate clothing." The Supreme Court, in *Wilson v. Seiter,* 501 U.S. 294, 304 (1991) has also stated that

an Eighth Amendment violation is present when conditions of confinement "have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth, or exercise".

It is clear that Mr. Folse been denied even some of the basic necessities of life. In *Hamm v. DeKalb County*, 774 F.2d 1567, 1573 (11th Cir. 1985), the court explained: [T]here must be a minimum standard for providing detainees with basic necessities, the failure to meet which amounts to a violation of due process. A state's failure to provide any food to incarcerated detainees, for example, clearly would violate the due process protection of a pretrial detainee regardless of the state's objective . . . The state's interest in limiting the cost of detention, for example, . . . will justify neither the complete denial of those necessities [food, living space, and medical care] nor the provision of those necessities below some minimally adequate level . . . even though the conditions imposed serve some ordinarily legitimate state objective. Finally, in *Lyons v. Powell*, 838 F.2d 28, 31 (1st Cir. 1988) the court noted that ". . . there may also be some merit to appellant's claim that his constitutional rights were violated by his confinement to his cell for 22 - 23 hours per day during a 27 day period."

Mr. Folse is denied a daily shower. He is not allowed to exercise daily. He is exposed to conditions of severe isolation which are likely to provide adverse psychological effects. Taken together, these deprivations have a mutually reinforcing effect which deprives Mr. Folse of basic human needs and violates the Fifth and Eighth Amendments of the United States Constitution.

## CONCLUSION

Mr. Folse requests the Court order that he be held in a humanitarian and constitutional fashion under appropriate conditions at one of the facilities typically used by the USMS to house pretrial detainees, and not in the New Mexico state version of "supermax".

Respectfully submitted,
The Law Office of Ryan J. Villa

 /s/  Ryan J. Villa
RYAN J. VILLA
Counsel for Kevin Folse
The Law Office of Ryan J. Villa
2501 Rio Grande Blvd NW, Suite A
Albuquerque, New Mexico  87104
(505) 639-5709
ryan@rjvlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Paul Mysliwiec
Office of the United States Attorney
paul.mysliwiec@usdoj.gov

 /s/ Ryan J. Villa
RYAN J. VILLA